Before STATE INDUSTRIAL COMMISSION, Respondent.

In the Matter of the Claim of JOSEPHINE ZIMMERMAN, Respondent, for Compensation to Herself under the Workmen's Compensation Law, for the Death of Her Son, PAUL ZIMMERMAN, *v.* THE NEW YORK CENTRAL RAILROAD COMPANY, Employer and Self-Insurer, Appellant.

Third Department, November 14, 1917.

**Workmen's Compensation Law — death of brakeman in charge of coupling cars — compliance with Federal Safety Appliance Acts — interstate commerce — evidence.**

A brakeman who had charge of the coupling of cars of a train engaged in interstate commerce met his death at about the time when two cars were being coupled. The railroad company contends that the death of the brakeman was caused by non-compliance by the company with the Federal Safety Appliance Acts, and that, therefore, the Workmen's Compensation Law has no application. There was no eye witness to the accident.

Evidence examined, and *held*, that the award and findings by the Commission that there was no violation of the Federal Safety Appliance Acts, and no negligence of the employer, and that the intestate was not engaged in interstate commerce, should be affirmed.

APPEAL by the defendant, The New York Central Railroad Company, from a decision and award of the State Industrial Commission, rendered on the 19th day of June, 1917.

*Visscher, Whalen & Austin [Robert E. Whalen* of counsel], for the appellant.

*Merton E. Lewis, Attorney-General [E. C. Aiken, Deputy Attorney-General,* of counsel], and *Robert W. Bonynge,* for the respondent Commission.

*Robert G. Perry [Charles A. Kalish* of counsel], for the respondent claimant.

KELLOGG, P. J.:

The intestate met his death at about the time when two cars of a milk train, on the employer's tracks, were being coupled. The train was engaged in intrastate commerce. He was the brakeman who had charge of the coupling.

The appellant's contention is that the death was caused by non-compliance by the railroad company with the Federal Safety Appliance Acts (27 U. S. Stat. at Large, 531, chap. 196, as amd.) and, therefore, that the Workmen's Compensation Law (Consol. Laws, chap. 67 [Laws of 1914, chap. 41] as amd.) has no application. There is no evidence that the cars making up the train were not fully and properly equipped according to the Safety Appliance Acts. The Commission has found as a fact, and the evidence sustains the finding, that there was no negligence of the employer, and that the injuries were not caused by reason of the defective condition of the couplings or by reason of the defective condition of any appliance used in connection therewith, and that the intestate was not engaged in interstate commerce. The last person who saw the brakeman alive was either Mr. O'Neil or the flagman Warren. The flagman says he saw him upon the cars a few feet from the place of the accident. O'Neil says he saw him upon the ground a few feet from the accident.

The claim that the Safety Appliance Acts removed this case from the Workmen's Compensation Law is that while the company's cars were properly equipped with couplers, coupling automatically by impact, that sometimes in rounding a curve such couplings would not meet. It is, therefore, claimed that probably the brakeman was between the cars to make the coupling. It seems to be conceded that ordinarily the couplings would meet at this place, and that in fact they did meet at this time. The dead body of the workman was found lying lengthways of the track, outside the track. If there were any question about the cars not coupling, the ordinary practice would be, before the cars came in close proximity, to adjust the coupling so that they would meet. It appears that the brakeman might have been under the cars at this time in coupling the air hose. No one saw the accident.

O'Neil, an employee, in his affidavit says that the deceased met his death while coupling the cars, but he concedes he does not know how it happened, and gives his theory. " The way I figured it, the ground is low at that point, on that side of the rail on the north side of the rail the ground is low and the rail is up higher than the ground and he being a small man, leaning over, watching that coupling to see if these would enter

or not, never suspecting the curve, and there was room enough in there to catch his head at the end of the cars. That's the only way I can figure it out." This theory does not indicate any defect in the couplers or that they would not readily couple by impact. The witness felt that the deceased was leaning over, watching to see if the coupling would occur by impact, and in some way forgot himself. The evidence of the undertaker, in a way, supports this theory. " It appeared to me like the skull was pushed up, like he seemed to be stooping over and something struck him and pushed it up."

The Commission was right in saying that there was no violation of the Safety Appliance Acts and no negligence of the employer. The cases cited by the appellant, therefore, have no application. There was no eye-witness, different theories were suggested, the entire evidence was before the Commission and it was its duty to decide the question of fact. It was unable to say what was the cause of the death, but it found that there was nothing the matter with the train equipment and that the death in some way resulted from the carelessness of the employee. It is not known and it is immaterial just how it happened so long as the appliances, equipment and cars were within the law. The award should be affirmed.

Award unanimously affirmed.